# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

JUSTIN ANDRA LITTLE,          )
          **Petitioner,**      )
                              )
v.                         )     **Case No.** 7:22cv00498
                              )
                              )
HAROLD CLARKE, Director,    )
Virginia Department of Corrections,  )
          **Respondent.**     )

# PETITION FOR A WRIT OF HABEAS CORPUS
# PURSUANT TO 28 U.S.C. § 2254

The Petitioner, Justin Andra Little, a prisoner in the Virginia Department of Corrections, through counsel, petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and asks the Court to set aside his conviction of possession with intent to distribute cocaine and corresponding sentence of 20 years imprisonment and a fine of $125,000 imposed by the Circuit Court for the City of Norfolk.  For the reasons that follow, Mr. Little avers that his conviction and sentence were obtained in violation of the laws and constitution of the United States of America.

This case presents an issue of prosecutorial misconduct.  During the investigation, the Norfolk police obtained a search warrant for an apartment based upon a controlled buy of cocaine conducted by a confidential informant, then

charged Mr. Little for possessing with intent to distribute drugs found during the execution of the warrant.  Before and during trial, the Commonwealth steadfastly refused to name its confidential informant or provide any information that would identify its informant because it contended that such information was irrelevant since Mr. Little was not charged with the controlled buy, but was only charged with the drugs recovered during the execution of the search warrant.

At trial, however, the Commonwealth presented extensive argument and evidence about the controlled buy and specifically sought to establish that Mr. Little had sold cocaine to the unidentified confidential informant.  The investigators described the informant as reliable, but refused to provide his or her name or even give the precise date of the alleged controlled buy.  Then, in closing argument, the prosecutor specifically argued that the jury should convict Mr. Little of constructive possession of cocaine with intent to distribute because he had allegedly sold cocaine to the unidentified informant.

In other words, Mr. Little, who represented himself at trial, was convicted based in large part on the word of an anonymous career informant who has still never been identified.  Mr. Little asks this Court to grant the writ and reverse his conviction and sentence, which are the product of a gross violation of adversarial process.  The constitution simply does not allow for the conviction and imprisonment of a man based upon the untested word of a secret witness.

2

## HISTORY OF THE CASE

Mr. Little was arrested on April 14, 2017 and indicted by a Norfolk grand jury on August 2, 2017.  He was charged with two offenses: possession with intent to distribute cocaine and possession with intent to distribute more than one-half ounce but less than five pounds of marijuana.  **Ex. 9** at 8–9.  He was tried in Norfolk before a jury on March 14–15, 2018.[1]  Mr. Little was initially represented by Joseph Lindsey, Esq., who handled the preliminary hearing on July 13, 2017, and filed a Motion to Suppress on September 25, 2017.  *See* **Ex. 1** (preliminary hearing transcript); **Ex. 2** (Motion to Suppress).  At around the same time that Mr. Lindsey filed the Motion to Suppress, Mr. Little began filing his own handwritten pro se motions, including a Motion to Compel [*sic*] Prosecutor to Reveal Identity of Informant dated September 21, 2017 (**Ex. 3**), a Motion for Franks Hearing dated October 2, 2017 (**Ex. 4**), and a Motion for Supplemental Discovery of Particularized *Brady* Material and Material Needed In Preparation for *Franks* Motion dated October 16, 2017 (**Ex. 5**).

On November 21, 2017, the court relieved Mr. Lindsey and appointed George Anderson, Esq., in his place.  **Ex. 6**.  Mr. Anderson filed his own discovery and *Brady* Motion on November 27, 2017.  **Ex. 7**.  Ultimately, all of the pending

---

[1] The transcripts of Mr. Little's trial are provided as **Ex. 9** (March 14, 2018) and **Ex. 10** (March 15, 2018).  The transcript of Mr. Little's sentencing hearing on October 5, 2018, is provided as **Ex. 11**.

motions were heard by the court on February 8, 2018.  **Ex. 8**.  By that time, Mr.

Little was representing himself *pro se* and Mr. Anderson served as standby

counsel.  On February 8, 2018, after taking evidence on the motions, the trial court

denied all of the pending defense motions.  *Id.*

      Mr. Little continued to represent himself *pro se* at trial with Mr. Anderson

serving as standby counsel.  At the conclusion of the case, the judge struck the

marijuana charge but submitted the cocaine charge to the jury.  **Ex. 10** at 268.  The

jury convicted Mr. Little of possession with intent to distribute cocaine (*id.* at 314–

16) and recommended a sentence of twenty years imprisonment plus a fine of

$125,000.  *Id.* at 334–35.  At his subsequent sentencing hearing on October 5,

2018, Mr. Little was represented by James Broccoletti, Esq.  **Ex. 11**.  At the

conclusion of that hearing, the Court imposed the twenty-year sentence and

$125,000 fine recommended by the jury, plus an additional three suspended years.

*Id.* at 25.

      On appeal, Mr. Little was represented by Trevor Robinson, Esq.  The Court

of Appeals initially denied his appeal on June 18, 2019.  (Record No. 1594-18-1).

A three-judge panel of the Court of Appeals denied the appeal on August 20, 2019.

Finally, the Supreme Court of Virginia denied Mr. Little's appeal on April 27,

2020.  (Record No. 191193).

Mr. Little filed a petition for a writ of habeas corpus in the Circuit Court for the City of Norfolk on April 27, 2021.  Without allowing discovery, holding an evidentiary hearing, or even permitting oral argument from counsel, the circuit court dismissed Mr. Little's state habeas petition on July 28, 2021.  **Ex. 12**.  Mr. Little appealed this order to the Supreme Court of Virginia, which refused to hear the appeal on June 1, 2022.  **Ex. 13**.  The instant petition is timely under 28 U.S.C. § 2244(d).

## STATEMENT OF FACTS

On April 14, 2017, Investigator Shauna Freeman with the Norfolk Police Department obtained a search warrant for 7448 Fenner Street, Apartment #2.  **Ex. 14** (search warrant).  While the search warrant was being executed, Justin Little was pulled over and arrested on an outstanding warrant in the parking lot of a Wal-Mart.  **Ex. 9** at 127–29.  Mr. Little was driving a red Mercedes-Benz with his mother as a passenger.  *Id*. at 128–29.  From the Mercedes, the police recovered $6000 from the center console, two cell phones, and a set of keys that unlocked both the apartment at 7448 Fenner Street and a green BMW that was parked in the lot of the complex.  *Id*.; *see also id*. at 135.  From the apartment, the police recovered three bags containing a total of 2.46 grams of crack cocaine, a 22.71 gram bag of marijuana, 96 empty Ziploc baggies, and a cell phone.  *Id*. at 141–42. From the trunk of the BMW, the police recovered a 1.83 gram bag of crack

5

cocaine, a safe, a digital scale, and a bag containing loose ammunition. *Id*. at 154–55.  From the interior of the BMW, the police recovered another digital scale, a 35.61 gram bag of crack cocaine, and an envelope with Justin Little's name and a different address (822 Mariner Street) on it. *Id*. at 155, 164.  No forensic evidence tied Mr. Little to any of the items recovered from any of these locations.

Harry Drew testified that he purchased cocaine from Mr. Little approximately 50 times over a three-year period. *Id*. at 100.  Drew also testified that he purchased cocaine from Mr. Little on March 23, 2017. *Id*. at 106–07.  He claimed that the March 23 purchase was made in front of the apartment complex on Fenner Street. *Id*. at 107.  Drew testified that after he made the purchase, he was stopped by Investigator Freeman, and that he told her that he had gotten the cocaine from Mr. Little and the location of the apartment. *Id*.  Detective Bailey made clear, however, that Mr. Little was not charged with the sale of cocaine to Mr. Drew, but was "only charged simply from the execution of the search warrant." *Id*. at 192.

Finally, the Commonwealth presented extensive testimony and argument regarding a controlled buy that was allegedly conducted at or near the Fenner Street apartment within 72 hours of the execution of the search warrant on April 14, 2017.  This alleged controlled buy is the basis of the instant habeas petition and is discussed in detail *infra*.

## CLAIMS FOR RELIEF

Mr. Little's habeas claim stems from the controlled buy that allegedly occurred within 72 hours of the April 14, 2017 search warrant. In the search warrant affidavit, Investigator Freeman wrote:

> Within the past seventy two hours, Investigator D. Bailey and I met with the "CI" for the purpose of making a controlled purchase of crack cocaine from 7448 Fenner Street apartment #2, Norfolk, Virginia. The "CI" was searched for narcotics and currency with negative results. The "CI" was given United States Currency with pre-recorded serial numbers: JJ93084810A, II88604270A, and JK30840109B. I directed the "CI" to go directly to 7448 Fenner Street apartment #2, Norfolk, Virginia exchange the pre-recorded United States Currency for crack cocaine and return directly to me. Investigator Bailey observed the "CI" go directly to 7448 Fenner Street apartment #2, Norfolk, Virginia. A short time later Investigator Bailey observed the "CI" leave the location and return directly to me. The "CI" turned over the crack cocaine that was purchased, which Investigator Bailey later field-tested with positive results for cocaine. The "CI" was searched, again for narcotics and currency with negative results. The "CI" then stated he/she went directly to 7448 Fenner Street apartment #2, Norfolk, Virginia and was met by the male he knows as "Blaze." He went inside the residence at the front door. "Blaze" handed the "CI" the requested quantity of crack cocaine in exchange for the pre-recorded United States Currency and left the residence.

**Ex. 14** at 5. With respect to the confidential informant who conducted the alleged controlled buy, the search warrant affidavit further stated:

> I was advised of the facts set forth in this affidavit, in whole or in part, by an informant. The informant's credibility of the reliability of the information may be determined from the following facts: The Confidential Informant (CI) has provided information to members of the Norfolk Police Department that has resulted in over thirty (30) search warrants which lead to the recovery of crack cocaine, heroin,

> marijuana, United States Currency and Firearms.  This information
> has been found to be true and accurate through investigations,
> surveillance and Norfolk police records.   The "CI" has made
> controlled purchases to include crack cocaine, heroin and marijuana
> and provided information as described [previously].  The "CI" has
> provided statements against his/her own penal interest.  The "CI" has
> used cocaine in the past, and he/she is familiar with its appearance,
> packaging and effects.

*Id*. at 6.

Prior to trial, Mr. Little and his counsel made numerous efforts to discover

the identity of the CI.  *See* **Exs.** 3, 5.  In a letter to defense counsel dated November

14, 2017, the prosecutor refused to provide any information regarding the CI or the

controlled buy, asserting that "those items are irrelevant and *would be inadmissible*

*at trial* since your client was not charged with that controlled purchase."  *See* **Ex.**

**15** (emphasis added).  At a pre-trial hearing on February 8, 2018, the

Commonwealth continued to argue that it was not required to disclose that

information "because according to [*Lanier v. Commonwealth*, 10 Va. App. 541

(1990)] it's not relevant information or helpful to the defense, because he was not

charged with that buy."  **Ex. 8** at 59.  Ultimately, The Court agreed that the

Commonwealth was not required to identify its CI, stating:

> So with respect to the disclosure of the identity of the informant, you
> made a good argument, but I agree with the Commonwealth.  They
> don't have to disclose the informant, because in this case the
> informant is a mere tipster.  When you get to trial, you can't try to
> attack probable cause of a search warrant; that's what we're doing
> here today.  The confidential informant's identity would not be
> relevant at the trial.  Your trial is for possession with the intent to

distribute what they found in the apartment and the car, but thank you.

*Id*. at 62–63.

Despite its pre-trial insistence that evidence regarding the controlled buy was irrelevant and inadmissible, the Commonwealth wasted no time bringing the alleged controlled buy into Mr. Little's trial.  During *opening statements*, the prosecutor immediately argued to the jury:

> [Freeman] then decided to use a confidential informant.  She used the confidential informant, and sometime within 72 hours of April 14th of last year to go into that apartment and make what we call a controlled buy.  The confidential informant was given a—some money, some police "buy money," we call it, searched for any narcotics on him and his person.  That person then went into the location, made a purchase of cocaine, and returned from that location to Investigator Freeman, no longer having the buy money but now having cocaine and turned that cocaine over to Investigator Freeman.
>
> Investigator Freeman also had a conversation with the CI about what had gone on, the confidential informant about what had gone on in the apartment.  Based on what all she had seen and heard and discussed with these people, Investigator Freeman on April 14th was able to secure a search warrant for 7448 Fenner Street, Apartment 2.
>
> Now, just prior to that, within that 72 hours, I should mention that when they sent the confidential informant in, Investigator Bailey was also situated outside the apartment, saw the defendant at the apartment that day.  He left for a short period of time, and then the defendant returned to the apartment, at which time the confidential informant went into the apartment.  After that buy went down, the defendant left the apartment, got into a maroon Mercedes and drove away.

**Ex. 9** at 57–58.

The Commonwealth's first witness was Investigator Freeman. *Id*. at 71. Freeman testified at length about the controlled buy that her confidential informant had carried out. *Id*. at 79–82. She vouched for the reliability of her CI, testifying that he "was known to be reliable and had been utilized by several investigators throughout the narcotics division." *Id*. at 79. She detailed the process for carrying out a controlled buy, including providing prerecorded currency, the instructions given to the CI, and the search of the CI before and after the transaction. *Id*. at 79–80. She went on for several pages regarding how a controlled buy of cocaine was carried out by this informant at 7448 Fenner St., Apt. #2 within 72 hours of April 14, 2017. *Id*. at 80–82.

The Commonwealth also called Investigator Dexter Bailey, who testified at length about the controlled buy, including the entire procedure for conducting a controlled buy and his personal observations during the controlled buy. *Id*. at 124–26. Bailey specifically testified that he observed Justin Little enter the apartment "two to three minutes" before the controlled buy and exit the apartment "right after" the controlled buy. *Id*. at 125–26.

During the defense case, Mr. Little re-called Investigator Freeman to the stand. Although Mr. Little asked her the exact date of the controlled buy, Freeman refused to answer him, stating "[w]hat you're trying to do is get me to inform you of who my confidential informant is, and I'm not going to provide who my

confidential informant is." **Ex. 10** at 255. Remarkably, the judge allowed this refusal to answer an extraordinarily basic question—the precise date of the alleged controlled buy—to stand.

Despite refusing to answer any defense questions that might risk identifying the CI, the investigators nevertheless vouched for the reliability of this anonymous witness. *See* **Ex. 9** at 79 (Freeman testifies that the CI "was known to be reliable and had been utilized by several investigators throughout the narcotics division"); *id*. at 193 (Bailey testified that "the confidential informant is reliable").

During closing arguments, the Commonwealth repeatedly relied upon the controlled buy in arguing the crucial element of constructive possession of the cocaine that was recovered from the apartment and the BMW. **Ex. 10** at 287 ("and then [Freeman] sent a confidential informant in to do a controlled buy"); *id*. at 290 ("On his questioning he said to her, What did that confidential informant tell you what was—that was done in the apartment. And she said that you sold me the drugs."); *id*. at 294–95 ("The mere fact that we did not find our buy money does not mean Justin Little is not a drug dealer."); *id*. at 296 ("He was seen in that apartment mere moments before the drug buy went down. And then he was seen coming out of that apartment after the drug buy went down. What else would he have been doing in that apartment?").

## CLAIM ONE
**The Commonwealth's failure to disclose the identity of the confidential informant and evidence that would diminish the informant's credibility violated Mr. Little's right to due process of law under *Brady v. Maryland* and its progeny.**

The foregoing facts make clear that Mr. Little was denied due process of law and a fair trial.  The Commonwealth steadfastly refused to provide any information regarding its confidential informant before trial, insisting that evidence regarding the controlled buy was not relevant or admissible because Mr. Little was not charged with that alleged transaction.  At trial, however, the Commonwealth immediately invoked the controlled buy in its opening statement, presented extensive evidence about the controlled buy, and then argued in closing that the controlled buy proved that Mr. Little constructively possessed the cocaine in the apartment and BMW with the intent to distribute it ("What else would he have been doing in that apartment?").  The Commonwealth's witnesses specifically vouched for the reliability of the informant who conducted the controlled buy.  But neither Mr. Little nor the jury was ever given any specific information about the informant, or even the date on which the controlled buy was alleged to have occurred.  When Mr. Little attempted to ask questions about the informant, Investigator Freeman simply refused to answer, stating "I'm not going to provide who my confidential informant is." **Ex. 10** at 255.

This is not the way trials work in the United States of America.  The

Constitution does not allow the Commonwealth to present evidence about secret

witnesses who level criminal accusations at the defendant without ever identifying

the witnesses or subjecting them to confrontation, cross-examination, and rebuttal.

The fundamental premise underlying our adversarial criminal justice system is that

the government's evidence will be subjected to the crucible of confrontation and

cross-examination.  *See*, *e.g.*, *Crawford v. Washington*, 541 U.S. 36, 61 (2004)

(The United States Constitution commands that "reliability be assessed in a

particular manner: by testing in the crucible of cross-examination").  The

Commonwealth's misconduct in this case deprived Mr. Little of a meaningful

opportunity to confront the evidence against him.

The Commonwealth is constitutionally required to disclose any evidence in

its possession that is favorable to Mr. Little.  *Brady*, 373 U.S. at 83; *United States

v. Bagley*, 473 U.S. 667, 676 (1985) (holding that the duty to disclose favorable

evidence encompasses not only exculpatory evidence, but also impeachment

material); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("the individual prosecutor

has a duty to learn or any favorable evidence known to the others acting on the

government's behalf in the case, including the police"); *Workman v. Commonwealth*, 272 Va. 633, 646 (2006) (same).[2]

In this case, the Commonwealth has failed to disclose favorable evidence regarding the many other controlled buys in which its confidential informant participated. The record in this case makes clear that this informant has a lengthy history of conducting controlled buys for the Norfolk Police Department. The search warrant affidavit executed by Freeman states that the informant has given information that led to "over thirty (30) search warrants." **Ex. 14** at 6. In fact, Freeman testified that the informant had helped her in so many cases that she confused the controlled buys when she testified at the preliminary hearing. **Ex. 8** at 33. The Commonwealth's Attorney also admitted that Freeman "had used this CI on many, many occasions." *Id*. at 53. It is clear, then, that this informant has a substantial history of working for law enforcement.

Additionally, Freeman's search warrant affidavit attests that the CI has conducted controlled buys of not only cocaine, but also heroin and marijuana. The affidavit further states Freeman's knowledge that the CI has used cocaine. *See* **Ex.**

---

[2] *Brady* and *Kyles* also make clear that due process is violated by a failure to disclose favorable evidence in the government's possession, regardless of the good faith or bad faith of the prosecutor. *Brady*, 373 U.S. at 87; *Kyles*, 514 U.S. at 437. Mr. Little is entitled to any favorable evidence in the possession of the Commonwealth's Attorney's Office, the Norfolk Police Department, and any other agency that assisted in the investigation of this case. He asks the Court to compel its production.

**14** at 6.  Based on these assertions, it is evident that the prosecution has information pertaining to the CI's history of drug abuse.  Such information is exculpatory in that it can be used to impeach an informant's perception, reliability, and memory—especially for such a prolific CI.  These are classic areas of cross-examination that Mr. Little was denied.

*Brady* material must be assessed by its value "if disclosed and developed by reasonably competent counsel."  *Bagley*, 473 U.S. at 707.  In this case, the fact that the confidential informant had participated in such a large number of controlled buys could have been used to impeach him or her and aid the defense investigation in numerous ways.  First, it has been established already that Freeman conflated her memory of this controlled buy with other controlled buys.  *See* **Ex. 8** at 33. The high number of controlled buys that this CI carried out is valuable impeachment information that could be used to suggest further confusion.  Second, the high number of controlled buys demonstrates the CI's bias in favor of law enforcement.  Third, it is obvious that this CI received some benefit for conducting a high number of controlled buys.  Often, confidential informants who conduct controlled buys are paid cash for their work; other times, they receive legal benefits.  Mr. Little was and is entitled to any information regarding pecuniary, legal, or other benefits that the CI in his case received.

A *Brady* violation occurs where the prosecution fails to disclose evidence favorable to an accused where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87. Evidence is favorable if the defense could use it to challenge the "reliability of the investigation" as a whole. *Kyles*, 514 U.S. at 446; *see also Workman*, 272 Va. at 647 (reversing conviction where the Commonwealth withheld information that "would have been a powerful tool for the defense not for its truth but rather to support its contention that police investigation was inadequate . . . ."); *Bly v. Commonwealth*, 280 Va. 656, 663–64 (2010) ("[T]he court must take into consideration the use the defense may properly make of the non-disclosed information. As we observed in *Workman*, in the *Brady* context such non-disclosed evidence may be, and often is, used to discredit an entire police investigation."). Thus, the CI's extensive history of working for the Norfolk Police Department undermines the strength of his or her identification of Mr. Little, his or her credibility as a witness, and the integrity of the investigation in this case.

Suppressed evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433. This standard does not require the defendant to show by a preponderance of the evidence that disclosure would have resulted in his acquittal. *Id*. at 434. Nor does it require the defendant to show that

after discounting the inculpatory evidence, there would not be sufficient evidence left to convict. *Id*. at 435. Rather, materiality is established if the evidentiary suppression "undermines confidence in the outcome of the trial." *Id*. at 434 (quoting *Bagley*, 472 U.S. at 678).

In this case, the suppressed evidence regarding the confidential informant clearly rises to the level of materiality. This is perhaps best illustrated by the fact that the Court struck the parallel marijuana charge on the motion to dismiss. **Ex. 10** at 268. In addition to the cocaine that was recovered from the kitchen cabinet in the apartment, the police recovered a 22.71 gram bag of marijuana from another cabinet in the same kitchen. **Ex. 9** at 141–42. In granting the motion to strike this charge, the trial court noted that another person resided in the apartment and that "[t]here's no evidence of the defendant selling marijuana." **Ex. 10** at 268. In other words, the Court found that evidence regarding Mr. Little's alleged sale of cocaine distinguished that charge from the marijuana charge. But the only evidence that Mr. Little sold cocaine came from the confidential informant, whose identity remains cloaked in secrecy, and from Harry Drew, another compromised witness who testified that he purchased cocaine from Mr. Little outside the apartment several weeks before the search.[3] Clearly, absent evidence about the controlled

---

[3] Freeman testified that she stopped Drew in a traffic stop on March 23, 2017. **Ex. 9** at 78. Freeman testified that she found cocaine on Drew and that she charged

(continued)

buy, there is a reasonable probability that Mr. Little would also have been acquitted of possession with intent to distribute cocaine.

28 U.S.C. § 2254(d) does not bar relief on this claim.  In cases such as these, where the habeas claim was adjudicated on the merits by the state court, this Court shall not grant habeas relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).

In this case, the state court's dismissal of this claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  § 2254(d)(2).  The lower court made the following factual determinations in granting the motion to dismiss:

---

him with possession of cocaine.  *Id*. at 91.  Drew told Freeman that he had purchased the cocaine from "Blaze" and identified a picture of Justin Little as "Blaze."  *Id*.  Notably, Freeman's testimony contradicted Drew's testimony. Freeman repeatedly testified that she saw Drew go into the apartment and leave before she pulled him over on March 23.  *Id*. at 77, 78, 91, 92.  Drew, on the other hand, specifically denied that he went into the apartment on March 23, but claimed he purchased $20 of cocaine from Mr. Little "in front of the apartment."  *Id*. at 107.  Drew also claimed that he had not been promised any benefit for his testimony and was "testifying today because it's the right thing to do and it's my civic duty."  *Id*. at 112.  He added "I was never made any offers, how can I be doing this to get out of trouble?"  *Id*. at 114.  Yet, after Mr. Little's trial, the felony cocaine charge against Drew was dismissed.

> The Commonwealth's direct testimony merely described the controlled buy transaction from the detectives' perspective. The Commonwealth did not ask detailed questions about the controlled buy and the informant's debriefing with investigators after the controlled buy. Instead it was Petitioner, acting *pro se*, who extensively cross-examined the investigators about the controlled buy and the informant's conversation with investigators after the controlled buy. It was only this questioning that elicited the fact that the CI purchased cocaine from Petitioner. Trial Tr. Vol I, 189–96. Petitioner is not entitled to a new trial because of evidence that he himself elicited.

**Ex. 12** at 2.

This is a gross distortion of the trial record and an unreasonable determination of the facts. As illustrated previously, the Commonwealth's *opening statement* went into great detail about the controlled buy and specifically asserted that Mr. Little entered the apartment right before the controlled buy and left the apartment right afterward. *See* **Ex. 9** at 57–58. It makes no difference that the Commonwealth did not state explicitly that the CI purchased cocaine "from Justin Little," because the Commonwealth argued that Investigator Bailey watched Mr. Little go in and out of the apartment at the time of the controlled buy. Thus, the Commonwealth obviously presented a case that the CI had purchased cocaine from Mr. Little. The Commonwealth then presented the exact same facts through its witnesses, Investigators Freeman and Bailey. Finally, the Commonwealth argued in closing that the jury should conclude that Mr. Little was selling cocaine because he "was seen in that apartment mere moments before the drug buy went down.

And then he was seen coming out of that apartment after the drug buy went down. What else would he have been doing in that apartment?"  **Ex. 10** at 296.

Thus, considering only the Commonwealth's own arguments and evidence, the Commonwealth obviously presented a case that put the credibility of its CI at issue.  The only evidence that the CI actually purchased cocaine at 7448 Fenner Street, Apt. 2 came from the still-unidentified CI himself (or herself).  Mr. Little has a constitutional right to any evidence in the possession of the Commonwealth or its agents that undermines the credibility of the confidential informant.  *Brady*, 373 U.S. at 83; *Bagley*, 473 U.S. at 676 (holding that the duty to disclose favorable evidence encompasses not only exculpatory evidence, but also impeachment material); *Kyles*, 514 U.S. at 437 ("the individual prosecutor has a duty to learn or any favorable evidence known to the others acting on the government's behalf in the case, including the police").

In addition to resulting in a decision that was based upon unreasonable determinations of facts, the state court adjudication of Mr. Little's habeas claim was also contrary to, and an unreasonable application of, clearly established federal law including *Brady* and its progeny.  § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 384 (2000).

The lower court held that "the informant's identity is not material and certainly would not have changed the outcome."  **Ex. 12** at 3.  Invoking the

testimony of Harry Drew (who claimed to have purchased cocaine from Mr. Little near the apartment approximately three weeks prior to Mr. Little's arrest), the lower could held that "[t]he evidence the police recovered *could have led a reasonable person to believe* Petitioner was distributing Schedule I/II drugs.  It was not reasonably probable that the results of the trial would have been different if Petitioner was privy to the CI's identity and why the CI was cooperating with the police."  *Id*. (emphasis added).

There are several problems with this analysis.  <u>First</u>, the lower court failed to apply the correct materiality standard required by the Supreme Court.  The question is not whether other evidence "could have led a reasonable person to believe" that the Petitioner was guilty.  The United States Supreme Court has expressly rejected the notion that materiality requires the Petitioner to demonstrate that no reasonable juror would have found him guilty in light of the undisclosed exculpatory evidence.  *Kyles*, 514 U.S. at 434–35 ("The second aspect of . . . materiality bearing emphasis here is that it is not a sufficiency of the evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.").  The question is whether the undisclosed evidence puts the case in such a different light as to undermine confidence in the outcome.  *Id*.  For this reason,

the state court adjudication was contrary to, and an unreasonable application of, *Kyles* and *Brady*.

Second, the lower court never had before it the suppressed exculpatory evidence, so its materiality analysis was entirely speculative. The state court could not possibly answer the question of whether the undisclosed evidence puts the case in such a different light as to undermine confidence in the outcome without knowing what the undisclosed evidence actually is. In this portion of its Order, the lower court described the undisclosed evidence as "the CI's identity and why the CI was cooperating with the police." **Ex. 12** at 3. But this is not what Mr. Little had alleged. The undisclosed evidence includes this information, but also includes any evidence related to the informant's past work for the Commonwealth, drug abuse, illegal conduct, expected benefits, and any other factor related to the informant's credibility. In short, the weight of the undisclosed evidence can only be assessed after the evidence has been revealed.

Third, the state court opined that the identity of the CI was not exculpatory because Mr. Little was not charged with the controlled buy. *Id*. However, as has already been amply illustrated, the Commonwealth directly linked the controlled buy to Mr. Little and argued specifically that the jury should conclude that Mr. Little "was selling drugs" because "[h]e was seen in that apartment mere moments before the drug buy went down. And then he was seen coming out of that

apartment after the drug buy went down.  What else would he have been doing in that apartment?"  **Ex. 10** at 296.  For *Brady* analysis, it does not matter in the slightest whether or not Mr. Little was charged with selling cocaine to the CI. Because the Commonwealth presented argument and evidence that he had done so, and asked the jury to find Mr. Little guilty of possessing cocaine with the intent to distribute on that basis, the credibility of the CI was directly at issue, and any evidence that would undermine the CI's credibility was relevant.

For this reason, the state court's adjudication was contrary to, and an unreasonable application of, *Kyles*, which holds that suppressed impeachment evidence is material if it is "relevant to undermine the credibility of the investigation as a whole."  *Kyles*, 514 U.S. at 446.  In this case, at a pre-trial hearing, Investigator Freeman testified that she inadvertently gave false testimony at Mr. Little's preliminary hearing because she conflated different controlled buys with the same informant while she was testifying.  **Ex. 8** at 33–34, 53.  Thus, Mr. Little would have been entitled to present evidence about the remarkable number of controlled buys that this CI made not only to show that the CI had an incentive to curry additional favor with the Commonwealth, but also to show that the number of controlled buys was so great that the lead investigator was unable to keep them straight while testifying.

**Fourth**, the lower court failed to consider the likelihood that the testimony about the alleged controlled buy influenced the jury's sentencing decision.  *Brady* itself holds that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt *or to punishment* . . ."  *Brady*, 373 U.S. at 87 (emphasis added).  Indeed, the Supreme Court in *Brady* affirmed the grant of the writ and invalidated the petitioner's sentence where the petitioner's "sole claim of prejudice goes to the punishment imposed."  *Id*. at 88.  Thus, clearly established federal law requires the post-conviction court to assess the materiality of suppressed evidence to the petitioner's sentence.  *See also United States v. White*, 238 F.3d 537, 540 n.2 (4th Cir. 2001) ("the *Brady* duty extends to evidence that is material to sentencing").

In this case, the sentencing range was 5–40 years, and the jury imposed a sentence of twenty years plus a fine of $125,000.  There is clearly a reasonable probability that the jury would have imposed a lesser sentence but for the evidence it heard regarding the alleged controlled buy.  Thus, the undisclosed impeachment evidence regarding the informant was material to the jury's sentencing decision.  The lower court simply failed to entertain this possibility at all.

**Fifth**, the lower court did not grapple with the fact that, while almost 23 grams of marijuana were recovered from inside the same apartment, the trial court struck the possession of marijuana charge.  In so doing, the trial court specifically

noted that another person resided in the apartment and that "[t]here's no evidence of the defendant selling marijuana." **Ex. 10** at 268.  In other words, the trial court found that evidence regarding Mr. Little's alleged sale of cocaine distinguished that charge from the marijuana charge.  But the only evidence that Mr. Little sold cocaine came from the confidential informant, whose identity remains cloaked in secrecy, and from Harry Drew, another compromised witness who testified that he purchased cocaine from Mr. Little outside the apartment several weeks before the search.[4]  Clearly, absent evidence about the controlled buy, there is a reasonable probability that Mr. Little would also have been acquitted of possession with intent to distribute cocaine.  For this reason, the state court's adjudication was both contrary to and an unreasonable application of federal law (§ 2254(d)(1)) and was an unreasonable determination of the facts in light of the evidence before the state court (§ 2254(d)(2)).

## REQUEST FOR DISCOVERY

Undoubtedly, the Commonwealth of Virginia is in possession of undisclosed impeachment evidence regarding its confidential informant.  Notably, neither the Commonwealth nor the Respondent have ever claimed in prior proceedings that there is no impeachment information regarding the confidential informant's credibility (i.e. that there was no exculpatory evidence to disclose).  Nor has the

---

[4] For a summary of Drew's compromised testimony, see *supra* at pp. 17–18 n.3.

Commonwealth or Respondent ever asserted that the information sought was not in the possession of the Commonwealth and/or its agents at the time of Mr. Little's trial.  Neither the Commonwealth nor the Respondent has argued that any disclosure regarding the confidential informant was made to Mr. Little.  Thus, the Respondent has not contested either of the first two elements of *Brady*.  This is a tacit admission that the Commonwealth is continuing to suppress exculpatory information that undermines the credibility of the confidential informant.

Furthermore, even apart from these tacit admissions, there is ample evidence in the trial record to suggest that the Commonwealth has undisclosed information that would undermine the reliability of its CI.  The record in this case makes clear that this informant has a lengthy history of conducting controlled buys for the Norfolk Police Department.  *See supra* at 14–15.  Before Mr. Little's habeas claim can be properly adjudicated, the Court must require the Respondent to produce any and all *Brady* evidence in the Commonwealth's possession related to the confidential informant.

## CONCLUSION

The Commonwealth tried to have it both ways at Mr. Little's trial.  Before trial, the Commonwealth took the position that the controlled buy was only relevant to probable cause and that evidence regarding the controlled buy would be irrelevant and inadmissible at trial because Mr. Little was not charged with that

sale.  At trial, having successfully shielded its evidence from disclosure and meaningful cross-examination, the Commonwealth nevertheless presented extensive evidence and argument about the controlled buy.  No court should countenance this behavior.  If the Commonwealth intended to use evidence regarding the controlled buy against Mr. Little, then *Brady* required the Commonwealth to provide any and all information related to unreliability, bias, or incentives of the informant.  **Exhibit 5** at 9–11.  Now, this Court should compel the disclosure of this material and grant an evidentiary hearing.  Justin Little should not spend another day in prison based upon the laundered and sanitized testimony of an anonymous career informant.

WHEREFORE, on the basis of the above grounds, Mr. Little respectfully requests that this Court:

1. Issue a writ of habeas corpus that he may be discharged from his unconstitutional convictions, confinement, and sentences.

2. Grant him discovery and an evidentiary hearing at which he may present evidence in support of these claims.

3. Grant such other relief as law and justice require.

Respectfully submitted,

JUSTIN ANDRA LITTLE,
By Counsel

/s/ Matthew L. Engle____
Matthew L. Engle, VSB 46833
DONOVAN & ENGLE, PLLC

1134 East High Street, Unit A
Charlottesville, VA 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
matthew@donovanengle.com

## **Verification**

Under penalty of perjury, the Petitioner, Justin Little, being first duly sworn, says:

1.    He signed the foregoing petition; and

2.    The facts stated in the petition are true to the best of his information and belief.

_____
Justin Little

## **Certificate of Service**

I, Matthew L. Engle, hereby certify that on this 28th day of August, 2022, a true copy of the foregoing habeas petition was filed electronically and emailed to: oagcriminallitigation@oag.state.va.us and LDarron@oag.state.va.us.

/s/ Matthew L. Engle_____
Matthew L. Engle

28